NOT FOR PUBLICATION

RECEIVED OCT 31 2017 AT 8:30 WILLIAM T. WALSH CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IDEA BOARDWALK, LLC,

        Plaintiff-Appellee,

v.

POLO NORTH COUNTRY CLUB, INC.,

        Defendant-Appellant.

Civil Action No. 16-8683 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendant-Appellant Polo North Country Club, Inc.'s ("Polo" or "Appellant") appeal from an Order entered by the United States Bankruptcy Court ("Bankruptcy Court") on November 9, 2016 ("November 2016 Order") granting summary judgment in favor of Plaintiff-Appellee IDEA Boardwalk, LLC ("IDEA" or "Appellee"). (ECF No. 9.) IDEA filed opposition (ECF No. 10), and Polo replied (ECF No. 11). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Polo's appeal is DENIED.

## I. Background

### A. The Lease Agreement

As a part of its plan to open a now-defunct casino located in Atlantic City, New Jersey, Revel AC, Inc. (collectively with associated Revel entities,[1] "Revel") entered into a lease dated May 12, 2012 with AMG Boardwalk LLC, which assigned the lease to IDEA (the "Lease")[2] to operate two night clubs and a beach club (the "Venues"). *IDEA Boardwalk, LLC v. Polo N. Country Club (In re Revel AC, Inc.)*, No. 14-22654, 2016 WL 6155903, at *2 (Bankr. D.N.J. Oct. 21, 2016) (hereinafter "Bankr. Op."); (Appellant's Br. App. 1, Am. Compl. 14, ECF No. 9-1). The term of the Lease is for ten years, with a fifteen-year option to extend. Bankr. Op. at *2. In addition to monthly rental payments[3] due under the Lease, IDEA agreed to pay Revel a capital contribution of at least sixteen million dollars of the eighty-million-dollar construction costs (also referred to as "fit-out costs") for the Venues. *Id.* Section C(1)(a)(i)(1) of the Lease provides IDEA with a mechanism by which it may "recoup" its contribution during the first four years of the term, provided that IDEA meets a Gross Sales Threshold, as defined in the Lease.[4] *Id.*

On June 19, 2014, Revel filed its second voluntary Chapter 11 petition. *Id.* at *3. On August 11, 2014, Revel informed all tenants, including IDEA, of its intention to close the casino

---

[1] The Chapter 11 debtors are: Revel AC, Inc., Revel AC, LLC, Revel Atlantic City, LLC, Revel Entertainment Group, LLC, NB Acquisition, LLC, and SI LLC. *IDEA Boardwalk, LLC v. Polo N. Country Club (In re Revel AC, Inc.)*, No. 14-22654, 2016 WL 6155903, at *1 n.1 (Bankr. D.N.J. Oct. 21, 2016).

[2] The Lease, including exhibits, is over one hundred pages long. It utilizes complicated defined terms, calculations, and cross-references. (*See* Appellant's Br., App. 3 and 4, Lease, ECF Nos. 9-3, 9-4.) Additionally, for ease of reference, the Court utilizes the page numbers generated by the electronic filing system in its citations to the parties' appendices.

[3] Monthly rental payments are calculated by multiplying IDEA's Distributable Cash Flow from the Venues by the landlord's Percentage Share, resulting in a Percentage Rent amount. (Appellant's Brief, App. 3 at 58.)

on or before September 10, 2014. *Id.* On August 28, 2014, Revel filed a motion to reject the Lease (the "Rejection Motion") *nunc pro tunc* to September 2, 2014, which is the date Revel closed its doors. *Id.*

B. Sale of Revel's Assets to Polo

After various appellate proceedings,[5] on March 20, 2015, Revel and Polo executed an Amended and Restated Asset Purchase Agreement (the "APA"). *Id.* The APA provided that Polo would purchase "certain claims" Revel may have against IDEA with respect to the Lease, and Polo agreed to assume Revel's liability to IDEA for an administrative expense claim of a maximum of $133,872.31. (Appellee's Br. App. 1, Am. and Restated Asset Purchase Agreement at 118-20, ECF No. 10-2.) On the same date, Revel filed a motion to sell its assets to Polo (the "Sale Motion") free and clear of liens, claims, encumbrances, and interests, including the Lease. Bankr. Op. at *3.

---

[4] In pertinent part, Section C(1)(a)(i)(1) of the Lease states:

> In the event that, in any Recoupment Measurement Period (defined below) for such Venue in which the applicable Gross Sales Threshold (defined below) has been met, (A) the Applicable TCC Amount (defined below) exceeds (B) an amount equal to 40% of the aggregate Distributable Cash Flow attributable to such Venue for such Recoupment Measurement Period, then Landlord shall pay to tenant, within thirty (30) days following the last day of such Recoupment Measurement Period, [an] amount (the "Recoupment Amount") equal to (x) the excess of the amount in clause (A) over the amount in clause (B) minus (y) the aggregate Recoupment Amounts previously paid to Tenant with respect to prior Recoupment Measurement Periods within the same Recoupment Year.

(*Id.*)

[5] On January 8, 2015, the Bankruptcy Court previously approved a sale of Revel's assets free and clear of, among other things, the Lease. *In re Revel AC, Inc.,* 525 B.R. 12, 22 (D.N.J. 2015). IDEA moved to stay the sale pending appeal, but the district court denied its motion. Bankr. Op. at *3 n.7. IDEA then filed an emergency motion for a stay pending appeal and to expedite its appeal. *In re Revel AC, Inc.,* 597 F. App'x 115, 116 (3d Cir. 2015). The Third Circuit granted its motion but "only to the extent [IDEA] seeks to stay paragraph 14 of the Sale Order [which permits Revel's sale free and clear of various liens and interests] as it pertains to IDEA." *Id.*

IDEA, along with other tenants, opposed the Sale Motion. *Id.* On April 6, 2015, the Bankruptcy Court entered an Order granting the Sale Motion and approving the APA, but subject to IDEA's rights under the Lease (the "Sale Order").[6] *Id.* The sale closed the next day. *Id.*

On April 13, 2015, IDEA filed a cross-motion (the "IDEA Cross-Motion") in response to Revel's Rejection Motion, filed almost eight months prior, for clarification of its rights pursuant to 11 U.S.C. § 365(h) ("Section 365(h)"). *Id.* On April 20, 2015, the Bankruptcy Court entered an Order granting Revel's Rejection Motion to reject the Lease *nunc pro tunc* to September 2, 2014. *Id.* On May 1, 2015, pursuant to Section 365(h), IDEA filed a Notice of Election to retain its rights under the Lease "that are appurtenant to the real property."[7] *Id.* On June 22, 2015, and in light of Polo's April 2015 purchase of Revel, the Bankruptcy Court entered an Order granting Revel's Motion to Substitute Polo as defendant in the underlying bankruptcy adversary proceeding. *Id.*

On June 30, 2015, the Bankruptcy Court ruled on the IDEA Cross-Motion and enjoined

---

[6] The Sale Order provides, in relevant part:

> Notwithstanding anything to the contrary in this Sale Order or the Agreement, the Sale of Assets to [Polo North] pursuant to this Sale Order shall not be free and clear of (i) any existing tenancies and/or possessory interests of the Amenity Tenants, ACR and IDEA, respectively, pending the Debtors' rejection pursuant to Section 365 of the Bankruptcy Code of the agreements containing such tenancies and/or possessory interests (the "Possessory Agreements") and (ii) any rights elected to be retained by each of the non-debtor counterparties to the Possessory Agreements pursuant to Section 365(h) of the Bankruptcy Code after the Debtor's rejection of the respective Possessory Agreements (such tenancies, interests and rights referred to in (i) and (ii) collectively the "Possessory Interests").

Bankr. Op. at *3 (alteration in original).

[7] Such appurtenant rights, according to the notice, included rights "such as those relating to the amount and timing of payment of rent and other amounts payable to the lessee and any right to use, possession, quiet enjoyment, subletting, assignment, or hypothecation and utility and other easements." *Id.* (internal quotations omitted).

4

Polo from interfering with IDEA's rights under the Lease, finding that Polo "is now treated as the landlord with both the benefits and burdens of [Section] 365(h)" ("June Opinion"). *Id.* at *4 (citation omitted). The June Opinion stated that IDEA was entitled to its possessory rights, including the amount and timing of payment of rent and other amounts made payable by the Lease under Section 365(h). *Id.*

### C. The Current Appeal

Months prior to the asset sale, on September 3, 2014, IDEA filed a Complaint against Revel, amended on September 26, 2014, seeking, among other things: (1) temporary, preliminary, and permanent injunctive relief to protect its rights under the Lease and (a) prevent Revel from engaging in conduct that prevents IDEA from operating the Venues or, to the extent the lease is rejected, enjoying its rights under the Lease that are in or appurtenant to the real property; and (b) compel Revel (i) to perform pursuant to the terms of the Lease, and (ii) to the extent the lease is rejected, to allow IDEA to enjoy its rights under the lease that are in or appurtenant to the real property (Appellant's Br. App. 1, Am. Compl. 7-33); (2) confirmation that IDEA is entitled to recoupment (*id.* at 29-30); and (4) other declaratory relief (*id.* at 31-33).

On August 28, 2015, Polo answered IDEA's Amended Complaint and filed a counterclaim against IDEA for unpaid rent originally due to Revel. (Appellee's Br. App. 4, Polo Answer With Countercl. at 147-51, ECF No. 10-4.) On June 8, 2016, IDEA moved for summary judgment on certain of its claims. Bankr. Op. at *1.

On November 9, 2016, the Bankruptcy Court granted partial summary judgment to IDEA. The Bankruptcy Court permitted IDEA to: (1) deduct from rent liabilities owed to it by Revel; (2) offset damages related to Revel's rejection of the Lease against rent due to Polo; and (3) deduct a "Recoupment Amount," as defined by the Lease, against future rents due to Polo. On November

22, 2016, Polo filed an appeal to district court. (Notice of Appeal, ECF No. 1.)

II. <u>Legal Standard</u>[8]

The standard of review of bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). A district court conducts a *de novo* or plenary review of a bankruptcy court's legal conclusions. *Ryker v. Current*, 301 B.R. 156, 162 (D.N.J. 2003) (citing *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997); *Chemetron Corp. v. Jones*, 72 F.3d 341, 345 (3d Cir. 1995), *cert. denied*, 517 U.S. 1137 (1996)). Conversely, a bankruptcy court's factual findings will not be set aside unless they are "clearly erroneous." *Id.* (citing Fed. R. Bankr. P. 8013; *Chemetron Corp.*, 72 F.3d at 345; *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 203 (3d Cir. 1995)).

In this case, the Court must review the Bankruptcy Court's grant of summary judgment, which is a legal determination; therefore, the Court applies a *de novo* standard of review and must reapply the summary judgment standard. *See Ryker*, 301 B.R. at 162. Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is a fact "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A material fact raises a "genuine" dispute if "a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 250).

---

[8] This matter arises under Title 11 of the United States Code, as the action involves the substantive rights granted pursuant to Section 365(h) and is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1)(A), (N), and (O). In a core proceeding, a bankruptcy court can "hear and determine" cases and "enter appropriate orders and judgments," subject to the district court's appellate review. *See* 28 U.S.C. § 157(b)(1); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2016). Pursuant to 28 U.S.C. § 158(a), the Court has subject-matter jurisdiction to review appeals from "final judgments, orders, and decrees" of a bankruptcy court. *In re Truong*, 513 F.3d 91, 93 (3d Cir. 2008) (alteration in original).

To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in a light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "Thereafter, the nonmoving party creates a genuine dispute of material fact if sufficient evidence is provided to allow a reasonable jury to find for him at trial." *Pratt v. City of Phil.*, No. 11-1346, 2013 WL 1755215, at *4-5 (E.D. Pa. Apr. 23, 2013) (citing *Anderson*, 477 U.S. at 248).

### III. Discussion

The Court affirms the Bankruptcy Court's grant of summary judgment. An overview of two important provisions of the Bankruptcy Code, a summary of the Bankruptcy Court's decision, a summary of the parties' arguments, and the Court's analysis appear below.

#### A. Sections 363(f) and 365(h)

As background, the Court highlights two important provisions in the Bankruptcy Code: Section 363(f) provides that a debtor's property may be sold "free and clear of any interest in property of an entity other than the estate" if certain conditions are met ("Section 363(f)"). 11 U.S.C. § 363(f). Section 365 allows a debtor in bankruptcy to assume or reject an executory contract or unexpired lease, subject to certain limitations and court approval, while also providing the affected counterparty with protections. 11 U.S.C. § 365(a). When a debtor-landlord rejects an unexpired lease on real property, Section 365(h) provides a tenant with two options, one of which is relevant here:

> if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as **those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that**

7

**are in or appurtenant to the real property** for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1)(A)(ii) (emphasis added). If the tenant retains its rights pursuant to this section, then Section 365(h)(1)(B) further provides that:

> **the lessee may offset against the rent** reserved under such lease for the balance of the term after the date of the rejection of such lease and for the term of any renewal or extension of such lease, **the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such lease**, but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

11 U.S.C. § 365(h)(1)(B) (emphasis added).

### B. Bankruptcy Court Opinion

The Bankruptcy Court identified Count VIII of IDEA's Amended Complaint as the "heart" of the dispute. Bankr. Op. at *1. In that count, IDEA sought declaratory relief regarding its rights and obligations under the Lease in light of Section 365(h). *Id.* The critical question before the Bankruptcy Court was whether IDEA could deduct the Recoupment Amount from the rent it owed to Polo. *Id.*

#### 1. Rights Under the Lease

The Bankruptcy Court noted that pursuant to the Sale Order, Polo's purchase of Revel's assets was subject to IDEA's leasehold interests and it had previously determined[9] that the asset sale pursuant to 11 U.S.C. § 363(f) did not extinguish IDEA's rights under Section 365(h). Bankr. Op. at *6. Accordingly, the Bankruptcy Court held that "[a]s a consequence of the sale, Polo North has stepped into the shoes of the Debtors, and thus, Polo North is treated as the landlord, with both

---

[9] For clarity, the Court notes that the Bankruptcy Court issued this ruling in the June Opinion in connection with the IDEA Cross-Motion.

8

the benefits and burdens of Section 365." *Id.*

Revel's rejection of the Lease, the Bankruptcy Court noted, did not constitute a termination, but rather a breach. *Id.* at *7. The language of Section 365(h), however, did not clearly define "the parameters" of Polo and IDEA's relationship going forward. *Id.* The Bankruptcy Court, therefore, found that by virtue of its continued possession, IDEA must "adhere to all of its covenants and agreements under the Lease" but "§ 365(h)(1)(B) allows IDEA to offset against future rent any damages caused, after rejection, by the Debtors' nonperformance of the Lease terms." *Id.* at *8. The Bankruptcy Court noted that Polo's obligations are less clear, but Polo was excused from performing all duties under the Lease, except for "allow[ing] . . . IDEA's continued possession," "use and quiet enjoyment of the premises, [and its] rights appurtenant to the real property." *Id.* at *8.

### 2. Recoupment of IDEA's Capital Contribution

The Bankruptcy Court noted that it previously held Section 363(f) does not override a tenant's protections under Section 365(h) and Polo purchased Revel's assets subject to IDEA's rights. Bankr. Op. at *6. Moreover, IDEA's Section 365(h) rights remained after the asset sale and confirmation of the debtor's bankruptcy plan. *Id.* The issue, it observed, is whether IDEA's Section 365(h) rights include recoupment of any capital contribution. *Id.* at *7.

The Bankruptcy Court relied on *In re Flagstaff Realty Associates*, 60 F.3d 1031 (3d Cir. 1995) in its analysis. *Id.* at *9. In *Flagstaff*, a debtor-landlord failed to provide the tenant with repairs required under the lease. Bankr. Op. at *8. The tenant conducted the repairs and offset the costs against its rent, as explicitly permitted in the lease. *Id.* The landlord filed for bankruptcy and the tenant was not repaid. *Id.* The landlord debtor moved to reject the lease, the tenant invoked its Section 365(h) right to remain in possession of the premises, and the tenant filed an action for

9

declaration of rights with respect to its rental payments. *Id.* The Third Circuit held that pursuant to Section 365(h), the tenant could deduct from its rent expenses incurred prior to the landlord's bankruptcy and rejection of the lease. *Id.* at *9. The lease provision permitting the tenant to reduce its rent for advancing certain of the landlord's costs was a part of the rent calculation. *Id.*

With *Flagstaff* as background, the Bankruptcy Court set forth certain provisions of the Lease governing the calculations and payment of Percentage Rent and the Recoupment Amount. *Id.* It noted that it had not identified any right to deduct the Recoupment Amount from future rent, and the landlord was to make separate payment of the Recoupment Amount to IDEA. *Id.* at *10. The Bankruptcy Court stated that the language of Section 365(h)(1)(A)(ii), however, "preserves all of IDEA's Lease rights which relate 'to the amount and timing of payment of rent and other amounts payable by the lessee.'" *Id.* (citing 11 U.S.C. § 365(h)(1)(A)(ii)). Here, according to the Bankruptcy Court, the Lease provisions and parties' performance indicated that Percentage Rent and Recoupment Amount are "expressly linked." *Id.* The Bankruptcy Court observed that IDEA is only able to recoup its initial investment if "certain thresholds in Percentage Rent have been reached." *Id.* The Bankruptcy Court concluded that as reflected in Section C.1(a)(i)(3) of the Lease, IDEA took into account its ability to recoup its capital investment when it negotiated its Lease obligations, including its payment of Percentage Rent. *Id.* This provision states that the section covering the recoupment payment process, among others, was a "material inducement[] for Tenant to enter into the Lease and that Tenant would not have entered into this Lease" but for those sections. *Id.*

The Bankruptcy Court found that pursuant to *Flagstaff*, the doctrine of equitable recoupment provides relief for IDEA. *Id.* at *11. It outlined Third Circuit case law, discussed further by the Court in <u>Section III.D.</u> below, and held that the requirements for equitable

recoupment were satisfied and the defense of equitable recoupment survives discharge in a bankruptcy plan. *Id.*

### C. The Parties' Arguments

Polo argues that the Bankruptcy Court erred in the following: (1) allowing IDEA to deduct from rent liabilities owed by Revel; (2) ruling that IDEA could offset damages related to Revel's rejection of the Lease against rent due to Polo, an alleged *bona fide* purchaser;[10] (3) allowing IDEA to deduct a Recoupment Amount against future rents due to Polo; and (4) failing to incorporate two concepts included in the Bankruptcy Court's October 21, 2016 Memorandum Decision in the November 2016 Order. (Appellant's Br. 1-2.)

Polo argues that: when it purchased Revel's assets, it did not assume as a liability any recoupment amount claimed by IDEA (*id.* at 5); by remaining in possession, IDEA could only set off damages caused by Revel's nonperformance after its rejection of the Lease (*id.* at 10); and recoupment of the capital contribution is not a "possessory right" protected by Section 365(h) (Appellant's Reply Br. 6, ECF No. 11). Additionally, Polo maintains that any claims Polo had against Revel were extinguished by the bankruptcy (Appellant's Br. 13); the doctrine of equitable recoupment is inapplicable because IDEA's obligation to pay rent to its landlord and Revel's (and potentially Polo's) obligation to pay a Recoupment Amount to IDEA do not arise out of the same transaction (*id.* at 18); and the doctrine of equitable recoupment only permits a claimant to recoup

---

[10] Polo takes issue with what it believes is an unfair situation: it asserts that a previous bankruptcy judge permitted the sale of Revel's assets free of any obligations to IDEA, and Polo contracted for a sale under the same terms, but a different bankruptcy judge later issued a sale order approving the sale subject to certain of IDEA's rights under the Lease. (*See* Appellant's Br. 20.) Nevertheless, Polo fails to provide both an explicit definition of a "bona fide purchaser" in this context and a justification of why it qualifies for this status. Instead, Polo makes conclusory characterizations.

11

money from a debtor, not a purchaser of the debtor (*id.* at 24).[11]

In opposition, IDEA argues that the Bankruptcy Court did not err in: (i) permitting IDEA to offset the Recoupment Amount against its rent pursuant to Section 365(h), as its rights under this section survived the asset sale; and (ii) finding that equitable recoupment was a defense and not a claim or interest, and therefore survives a Section 363(f) sale and confirmation of a bankruptcy plan pursuant to 11 U.S.C. § 1141. (Appellee's Br. 24, ECF No. 10.) IDEA, it contends, may offset the Recoupment Amount from rent for the periods before and after its acquisition of the casino. (*Id.* at 17, 24.)

### D. Analysis

#### 1. Rights Under the Lease

As an initial matter, the Court acknowledges the split between various courts regarding whether a debtor-lessor may sell real property free and clear under Section 363(f) and strip a lessee of its rights under Section 365(h).[12] The facts of this case involve a further complication in the

---

[11] The Court carefully reviewed Polo's brief to distill and consider its arguments; however, its disjointed structure did not effectively present the complicated procedural history and substantive law.

[12] In many instances, courts concluded that a tenant's rights under Section 365(h) trump a sale pursuant to Section 363(f) and hold that real property may not be sold pursuant to Section 363(f) free and clear of a lessee's interests under Section 365(h). *See, e.g., In re Crumbs Bake Shop, Inc.*, 522 B.R. 766, 778-79 (Bankr. D.N.J. 2014) (holding that a licensee's rights pursuant to 11 U.S.C. § 365(n) are not extinguished by a Section 363(f) sale and utilizing a Section 365(h) analysis); *In re Zota Petroleums, LLC*, 482 B.R. 154, 163 (Bankr. E.D. Va. 2012); *In re Samaritan Alliance, LLC*, 2007 WL 4162918, at *4-5 (Bankr. E.D. Ky. Nov. 21, 2007); *In re Haskell L.P.*, 321 B.R. 1, 8-9 (Bankr. D. Mass. 2005); and *In re Churchill Props. III, Ltd. P'ship*, 197 B.R. 283, 288 (Bankr. N.D. Ill. 1996). In contrast, other courts have held that real property may be sold pursuant to Section 363(f) free and clear of a lessee's interests under Section 365(h). *Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 702 (S.D.N.Y. 2014); *see e.g., Pinnacle Rest. at Big Sky, LLC v. CH SP Acquisitions (In re Spanish Peaks Holdings II, LLC)*, 872 F.3d 892, 901-02 (9th Cir. 2017); *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543, 548 (7th Cir. 2003); *Downtown Athletic Club of N.Y.C., Inc. v. Kremer*, No. M-47, 2000 WL 744126, at *4-5 (S.D.N.Y. June 9, 2000); and *In re R.J. Dooley Realty, Inc.*, 2010 WL 2076959, at *6-8 (Bankr. S.D.N.Y. May 21, 2010).

application of Section 365(h)—this is not a dispute between the original landlord and the tenant. The Court, however, agrees with the Bankruptcy Court's assessment that the debtor-lessor Revel rejected the Lease, sold its assets to Polo, subject to the Lease as determined by the Bankruptcy Court's Sale Order, and therefore, Polo "stepped into the shoes of the Debtors, and ... Polo North is treated as the landlord, with both the benefits and burdens of Section 365." Bankr. Op. at *6. Accordingly, the Court agrees with the Bankruptcy Court's characterizations of the status of the parties' performance obligations under the Lease.

Additionally, the Court finds that the Bankruptcy Court properly held that IDEA's right to recoup its capital contribution was preserved by the language of Section 365(h) because the capital contribution relates "to the amount and timing of payment of rent and other amounts payable by the lessee." 11 U.S.C. § 365(h)(1)(A)(ii). The Court does note that based on its reading of the Lease, IDEA's entitlement to recoup its capital contribution arises when certain Gross Sales Thresholds are met, not Percentage Rent; however, this does not alter the Court's analysis.

2. **Recoupment of IDEA's Capital Contribution**

The Court further finds that the equitable remedy of recoupment allows IDEA to deduct the Recoupment Amount from rental payments to Polo. The doctrine of recoupment allows a creditor to reduce amounts paid to a debtor because it "is essentially *a defense to the debtor's claim against the creditor rather than a mutual obligation*" in situations "where the creditor's claim against the debtor *arises from the same transaction* as the debtor's claim[.]" *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 260 (3d Cir. 2000) (citing *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984) (emphasis added); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079-80 (3d Cir. 1992). The "debts must arise out of a single transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations."

13

*In re Univ. Med. Ctr.*, 973 F.2d at 1081; *see also In re Anes*, 195 F.3d 177, 182 (3d Cir. 1999) (quoting *In re Univ. Med. Ctr.*, 973 F.2d at 1081); *Folger Adam Sec., Inc.*, 209 F.3d at 260 (applying the recoupment doctrine and the same transaction test). Under these circumstances, the defense authorizes a creditor to "abate[] or reduc[e]" a debtor's claim. *In re Univ. Med. Ctr.*, 973 F.2d at 1079 (citation omitted).

Moreover, the Third Circuit has held that recoupment survives a free and clear sale pursuant to Section 363(f) because it a defense and not an "interest" that may be extinguished within the meaning of that statute. *Folger Adam*, 209 F.3d at 254. The Third Circuit has further held that approval of a bankruptcy plan is not a *per se* bar to a creditor's assertion of a recoupment defense. *Flagstaff*, 60 F.3d at 1035 (noting that the tenant had asserted its rights from the outset of its dispute with the landlord over repairs and its claim survived a confirmation and implementation of a reorganization plan).

### (a) IDEA's Affirmative Defense

In this case, pursuant to Section 2.1(m) of the APA, Polo explicitly purchased Revel's claims against IDEA with respect to the Lease:

> [a]ll of Sellers' (i) **claims against IDEA with respect to the lease** between Revel Entertainment Group, LLC and IDEA (as assignee of AMG Boardwalk LLC) for nonresidential real property concerning certain premises at the Revel Casino Hotel (the "IDEA Lease"), including any claims or counterclaims of the Sellers under the IDEA Adversary Proceedings[.]

(Appellee's Br. App. 1, APA 118) (emphasis added). Polo invoked this section of the APA when it asserted a claim against IDEA for rent due to Revel prior to its asset purchase. (Appellee's Br. App. 4, Polo Answer With Countercl. 147-52.) In its answer to Polo's counterclaim, IDEA asserted recoupment as a defense. (Appellee's Br. App. 3, IDEA Answer to Countercl. 159, ECF No. 10-4.) Here, Polo seeks to assert Revel's claims against its tenant, but deny the tenant its

14

recoupment payments under the Lease.

### (b) "Same Transaction" Test

Polo asserts that the Bankruptcy Court erred in finding that this case satisfies the "same transaction" test because IDEA's obligation to pay rent and Revel's (and potentially Polo's) obligation to pay any Recoupment Amount do not arise out of the same transaction. (Appellant's Br. 18.) Rather, according to Polo, the construction transaction occurred in the past and with Revel, a different party; whereas, future rent due to Polo is for services it would provide, not Revel. (*Id.*) The Court finds this argument unpersuasive and finds that the obligations arise out of the same transaction—the Lease.

Polo correctly observes that the rental calculation does not discuss a potential set off in rent, and pursuant to the Lease, the landlord must make a separate quarterly payment of a Recoupment Amount to IDEA; it is not deducted from rent due. (Appellant's Br. 16.) The calculations of both Percentage Rent and the Recoupment Amount, however, are set forth in the same section of the Lease and a common variable—the Distributable Cash Flow—is utilized in the calculation of both amounts. Additionally, as noted by the Bankruptcy Court, Section C.1(a)(i)(3) of the Lease states that the "Landlord acknowledges and agrees that this Section C.1(a), [which sets forth the Percentage Rent and Recoupment Amount], Section P and Section 5.8 are material inducements for Tenant to enter into this Lease and that Tenant would not have entered into this Lease but for Section C.1(a), Section P and Section 5.8." (Appellant's Br. App. 3, Lease at 59.) Section P governs early termination payment, calculated using the Tenant's Capital Contribution, while Section 5.8 is an anti-competitive provision preventing the landlord from hosting another nightclub on the premises without IDEA's consent. (*Id.* at 66, 86.) Section 5.8 states that "Landlord acknowledges that Tenant is making a *substantial investment* in the

Project pursuant to the terms of the Lease." (*Id.* at 86) (emphasis added). Based on the language of the Lease, the parties contemplated that the capital contribution and associated Recoupment Amount was a basis for entry into the Lease.

Moreover, if IDEA was unable to recover its capital contribution, then Polo, as the landlord, would enjoy the benefits of that capital contribution, obtaining rent on a property that includes retrofitted nightlife venues purchased at a low cost, but without the burden of performance of its obligations under the Lease and "it would be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations." *In re Univ. Med. Ctr.*, 973 F.2d at 1081. Accordingly, the Court finds that the Bankruptcy Court did not err as a matter of law in determining that IDEA has a recoupment right against future rents owed to Polo.

### 3. The Bankruptcy Court's Order

Polo argues that the Bankruptcy Court erred when it failed to incorporate in its November 2016 Order two essential concepts included in its Memorandum Decision. (Appellant's Br. 31-32.) Polo contends that the November 2016 Order: (i) should have stated that Polo "is no longer obligated to continue performance under the Lease, other than to provide the tenant with possession of the premises, and the rights appurtenant thereto. [Polo] need not comply with the balance of the performance obligations under the Lease;" and (ii) failed to state that "IDEA is required to operate its Venues, in compliance with its responsibilities under the Lease, as long as there are no legal or physical impediments to doing so." (Appellant's Br. 32.) In opposition, IDEA contends that although Polo criticizes the Bankruptcy Court's drafting of its order, Polo "fails to

cite any rule of procedure or persuasive case law to support its position that the order should be modified in some way." (Appellee's Br. 32.)

Rule 58 of the Federal Rules of Civil Procedure ("Rule 58") governs the entry of a judgment. Fed. R. Civ. P. 58. Judgments disposing of summary judgment motions must be set out in a separate document. *See* Fed. R. Civ. P. 58(a) (providing that "[e]very judgment and amended judgment must be set out in a separate document" except for certain enumerated motions[13]). A document is "separate" "if it satisfies three criteria: (1) it must be self-contained and separate from the opinion, (2) it must note the relief granted, and (3) it must omit (or at least substantially omit) the trial court's reasons for disposing of the claims." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 224 (3d Cir. 2007) (citing to *Local Union No. 1992, IBEW v. Okonite Co.*, 358 F.3d 278, 285 (3d Cir. 2004)). "[T]he judgment must be set forth in a document that is independent of the court's opinion or decision . . . [.]'" *Id.* (citing *In re Cendant Corp. Sec. Litig.*, 454 F.3d 235, 242 (3d Cir. 2006). Thus, "an order must be separately titled and captioned, not paginated consecutively to the opinion or memorandum, not stapled or otherwise attached to the opinion, and must be docketed separately." *Id.* (citing *Cendant*, 454 F.3d at 241; *Local Union No. 1992*, 358 F.3d at 284-85.)

Here, the November 2016 Order satisfies this standard: it was separately titled and captioned, not paginated consecutively or attached to the opinion, docketed separately, notes the relief granted, and merely makes reference to the Memorandum Decision. (November 2006 Order 19, ECF No. 9-2.) *See Murphy v. Mae (In re Murphy)*, 679 F. App'x 107, 110 (3d Cir. 2017) (deeming sufficient an order that was a "separate, two-page order, docketed separately from the

---

[13] The separate document exception applies to the following motions: "(1) for judgment under Rule 50(b); (2) to amend or make additional findings under Rule 52(b); (3) for attorney's fees under Rule 54; (4) for a new trial, or to alter or amend the judgment, under Rule 59; or (5) for relief under Rule 60." Fed. R. Civ. P. 58(a).

opinion . . . not[ing] the relief granted and [included a] reference to the Memorandum Opinion entered on the same date). Accordingly, the Court concludes that the Bankruptcy Court satisfied its obligation under Rule 58.

## IV. Conclusion

For the reasons set forth above, the Court DENIES Appellant's Appeal from Bankruptcy Court and AFFIRMS the Bankruptcy Court's grant of summary judgment. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated**: October 31, 2017